No. 2013-1549

IN THE

# United States Court of Appeals for the Federal Circuit

_____

**K/S HIMPP,**

**Appellant,**

**v.**

**HEAR-WEAR TECHNOLOGIES, LLC,**

**Appellee.**

_____

**Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Reexamination No. 95/001,022.**

_____

**BRIEF FOR APPELLEE**

_____

JONATHAN S. FRANKLIN
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-0466

SHEILA KADURA
FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
(512) 474-5201

December 5, 2013                 Counsel for Appellee

**Form 9**

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

K/S HIMPP _____ v. HEAR-WEAR TECHNOLOGIES, LLC

No. 2013-1549

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Jonathan S. Franklin _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Hear-Wear Technologies, LLC

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

J&M Sound Technologies, LLC

_____

4.  ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Fulbright & Jaworski, LLP: Jonathan Franklin, R. Ross Viguet, Wayne S. Livingstone, Craig J. Cox, Sheila Kadura

_____

| December 3, 2013 | /s/ Jonathan S. Franklin |
| Date | Signature of counsel |
| | Jonathan S. Franklin |
| | Printed name of counsel |

Please Note: All questions must be answered
cc: all counsel _____

124

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ............................................................................1

STATEMENT OF RELATED CASES ..............................................2

STATEMENT OF THE ISSUES.......................................................3

STATEMENT OF FACTS ................................................................3

      A.     The '512 Patent ........................................................3

      B.     HIMPP Files For Reexamination Of Hear-Wear's Patents .......4

      C.     The Board Affirms The Examiner's Decision Not To Adopt HIMPP's Proposed Rejections Of Claims 3 And 9 ........8

SUMMARY OF ARGUMENT ..........................................................10

STANDARD OF REVIEW ...............................................................12

ARGUMENT ....................................................................................13

    I.     The Board Did Not Err In Declining To Adopt HIMPP's Rejections Of Claims 3 And 9 When HIMPP Failed To Point To Evidence That The Recited Claim Elements Were Known In The Prior Art ...............................................................13

      A.     Neither The Examiner Nor The Board Was Required To Correct HIMPP's Failures By Relying On Unsupported Assertions About The Knowledge Of One Skilled In The Art ........................................................................13

      B.     Judicial Notice Cannot Rectify HIMPP's Failures Before The PTO...................................................................22

      C.     HIMPP Did Not Make Out A *Prima Facie* Case Of Invalidity Of Claims 3 And 9................................................27

      D.     HIMPP Failed To Timely Submit The Art That It Now Asserts Is Relevant To The Validity Of Claims 3 And 9 ........29

    II.    This Court Cannot Make New Factual Findings And Enter New Rejections Against Claims 3 And 9 ..................................35

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*In re Ahlert*, 424 F.2d 1088 (CCPA 1970) ........................................................25, 27

*Amgen Inc. v. F. Hoffman-LA Roche Ltd*, 580 F.3d 1340 (Fed. Cir. 2009) ........................................................................................................39

*In re Applied Materials, Inc.*, 692 F.3d 1289 (Fed. Cir. 2012) ...............................38

*Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379 (Fed. Cir. 2012) ...........................15, 30

*Biomedical Patent Mgmt. Corp. v. California*, 505 F.3d 1328 (Fed. Cir. 2007) ..............................................................................................13, 23

*Brown v. Piper*, 91 U.S. 37 (1875) ...................................................................26, 27

*Ciric v. Flanigen*, 511 F.2d 1182 (CCPA 1975)..........................................................22

*In re Corth*, 478 F.2d 1248 (CCPA 1973) ................................................................37

*Cruz v. Dep't of the Navy*, 934 F.2d 1240 (Fed. Cir. 1991) ....................................34

*Dickinson v. Zurko*, 572 U.S. 150 (1999) ..........................................................36, 37

*Enriquez-Gutierrez v. Holder*, 612 F.3d 400 (5th Cir. 2010)............................13, 23

*In re Eynde*, 480 F.2d 1364 (CCPA 1973) .......................................................24, 26

*In re Fox*, 471 F.2d 1405 (Fed. Cir. 1973).................................................................26

*In re Geisler*, 116 F.3d 1465 (Fed. Cir. 1997).........................................................21

*In re Huai-Hung Kao*, 639 F.3d 1057 (Fed. Cir. 2011)....................................13, 28

*In re Kahn*, 441 F.3d 977 (Fed. Cir. 2006) ...........................................................21

*In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000) .......................................................12

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) .........................7, 16, 17, 21, 39

*In re Kumar*, 418 F.3d 1361 (Fed. Cir. 2005).........................................................28

*In re Margolis*, 785 F.2d 1029 (Fed. Cir. 1986) ........................................36

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011) ....................................29

*Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372 (Fed. Cir. 2012)........................19, 20

*Murakami v. United States*, 398 F.3d 1342 (Fed. Cir. 2005) ............................13, 23

*In re NTP, Inc.*, 654 F.3d 1279 (Fed. Cir. 2011) ....................................36

*In re Oetiker*, 977 F.2d 1443 (Fed. Cir. 1992)........................................29

*On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080
    (Fed. Cir. 2000)...............................................................13

*Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352
    (Fed. Cir. 2000).............................................................36

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324 (Fed.
    Cir. 2009) .................................................................19

*In re Piasecki*, 745 F.2d 1468 (Fed. Cir. 1984) ....................................28

*Randall Mfg. v. Rea*, 733 F.3d 1355 (Fed. Cir. 2013) ......................................17, 18

*In re Raynes*, 7 F.3d 1037 (Fed. Cir. 1993) ...........................................26

*In re Sang-Su Lee*, 277 F.3d 1338 (Fed. Cir. 2002).........................................19, 21

*In re Schulze*, 346 F.2d 600 (CCPA 1965) ............................................21

*SEC v. Chenery*, 332 U.S. 194 (1947) ....................................................38

*Singh v. Brake*, 222 F.3d 1362 (Fed. Cir. 2000).......................................36

*In re Sullivan*, 498 F.3d 1345 (Fed. Cir. 2007).......................................13

*In re Sutton*, No. 2012-1255, 497 Fed. Appx. 29 (Fed. Cir. Nov.
    20, 2012) ..................................................................32

*In re Watts*, 354 F.3d 1362 (Fed. Cir. 2004)...............................23, 31, 32

*Won-Door Corp. v. Cornell Iron Works, Inc.*, No. 2:13-cv-331-
    TS, 2013 WL 5503188 (D. Utah Oct. 3, 2013) .................................20

*In re Zurko*, 258 F.3d 1379 (Fed. Cir. 2001) ........................... 18, 19, 21, 24, 33, 38

**STATUTES:**

35 U.S.C. § 141 (2010) ....................................................................................36

35 U.S.C. § 311(b)(2) (2010)...........................................................................14, 37

35 U.S.C. § 312(a) ...........................................................................................14, 37

35 U.S.C. § 315(c) (2010).................................................................................15

**RULES:**

37 C.F.R. 1.948(a)(1) .......................................................................................15

37 C.F.R. § 1.104(d)(2).....................................................................................20

37 C.F.R. § 1.947 ..............................................................................................15

37 C.F.R. § 1.948 ..............................................................................................14, 30

37 C.F.R. § 41.67(c)(1)(vi) ..............................................................................15

37 C.F.R. § 41.68(b)(1)(vi) ..............................................................................15

37 C.F.R. § 41.71(c)(3) .....................................................................................15

Fed. R. App. P. 16(a) ........................................................................................33

**OTHER AUTHORITIES:**

MPEP § 2666.05(II).........................................................................................14, 15, 30

MPEP § 2144.03 ...............................................................................................20, 22

MPEP § 2144.03(C)..........................................................................................20

MPEP § 716.01(c)(II) .......................................................................................21

MPEP § 2145(I) ................................................................................................21

MPEP § 2144.03(A)..........................................................................................25

MPEP § 2617(II)...................................................................................................31

# INTRODUCTION

The Patent Trial and Appeal Board ("Board") did not err in declining to reject patent claims in this *inter partes* reexamination where appellant K/S Hearing Instrument Manufacturers Patent Partnership's ("HIMPP's") request for reexamination failed to propose any rejection based on the art that HIMPP now argues the Board should have applied to reject the claims at issue. Separately, the examiner and Board correctly declined to adopt the rejections that HIMPP did propose because HIMPP failed to support its assertion that elements recited in the challenged patent claims would have been known to one skilled in the art of hearing aid design. Having failed to make its case before the examiner and the Board, HIMPP now asks this Court to reverse the Board based on arguments and art that were never properly presented to the Patent and Trademark Office ("PTO"). This Court should decline to do so.

HIMPP asserts that it did not have to produce or cite to any evidence supporting its assertions about what a person skilled in the art of hearing aid design would have known or done with respect to particular elements of the challenged patent. But nothing in the law requires the PTO to simply accept a requester's assertions when they are supported by no evidence at all. To the contrary, the Board would have been subject to reversal if it had made an obviousness rejection based on no record evidence.

Alternatively, HIMPP contends that a particular patent ("the Prentiss Patent") discloses the relevant claim elements. But the PTO did not commit reversible error in not relying on that art, because neither HIMPP's reexamination request nor its briefing or argument to the Board even mentioned that patent, much less explained its relevance. Indeed, HIMPP made no reference to the Prentiss Patent even when the Board specifically asked that it point to record evidence to support HIMPP's assertion that specified claim elements were known.

Finally, HIMPP asserts that this Court can now step in to invalidate patent claims based on newly raised evidence that was never presented to the PTO, or even based on no evidence at all. This Court, however, is a court of review, not some kind of super-examiner. Given that the examiner and Board committed no error in requiring HIMPP to support its core assertions with actual evidence, there is no basis for this Court to step outside the record to invalidate patent claims that the PTO properly upheld. This Court cannot consider in the first instance evidence and arguments that HIMPP failed to timely present to the Board, particularly when, as here, the ultimate determination on patentability must rely on underlying factual determinations.

## STATEMENT OF RELATED CASES

No other appeal in or from the same action in the PTO was previously before this or any other appellate court. The patent at issue in this appeal, U.S.

Patent No. 7,016,512 ("the '512 Patent"), is one of four patents asserted in

*Hear-Wear Technologies, LLC v. Oticon, Inc.*, No. 4:07-cv-212-CVE-FHM (N.D.

Okla.), which is currently stayed pending the outcome of PTO reexaminations,

including the one that gave rise to this appeal.  A377-79; A802.  The '512 Patent

was also the subject of an *ex parte* reexamination initiated by HIMPP.  Opening

Br. 22.  That reexamination concluded on July 17, 2012, with the PTO confirming

patentability of the claims at issue in this appeal.  *Id.* at 26.

## STATEMENT OF THE ISSUES

1.     Whether the Board erred in affirming the examiner's decision not to

adopt HIMPP's proposed rejections of claims 3 and 9 of the '512 Patent when

neither HIMPP's request for reexamination nor its briefing or argument to the

Board pointed to any evidence that the recited claim elements were known in the

prior art.

2.     Whether this Court can make the necessary factual findings in the first

instance and enter new obviousness rejections against claims 3 and 9 when the

PTO properly rejected HIMPP's arguments.

## STATEMENT OF FACTS

### A.     The '512 Patent.

The '512 Patent is generally directed to hearing aids that are cosmetically

acceptable and comfortable due to their small size and at least partially in-the-ear-

canal design.  A45 (abstract); A59-60.  The hearing aids are also functionally improved due to decreased feedback and detachable connections.  A61 (col. 5, ll. 16-19); A62 (col. 7, ll. 25-32); A66 (col. 16, ll. 25-42).  Claims 1, 2, 7, and 8 recite various elements of the claimed hearing aids such as specified speaker modules, cushion tips, tubular bodies, and insulating wiring portions.  A70.  Claim 3, which is dependent on claims 1 and 2, further recites that the "insulated wiring portion is terminated by a plurality of prongs that provide a detachable mechanical and electrical connection to an audio processing module."  *Id.*  Claim 9, which is dependent on claims 7 and 8, recites that the "insulated wiring portion is terminated by a plurality of prongs that provide a detachable mechanical and electrical connection to said behind-the-ear module."  *Id.*  The detachable connections recited in claims 3 and 9 allow for picking and choosing hearing aid components from parts that differ in size and capabilities, which allows the assembly of a hearing aid having a semi-custom fit and the desired functions.  *See* A66 (col. 16, ll. 25-42).

## B. HIMPP Files For Reexamination Of Hear-Wear's Patents.

The '512 Patent is owned by appellee Hear-Wear Technologies, L.L.C. ("Hear-Wear").  A45.  HIMPP filed a request for *inter partes* reexamination of the '512 Patent in December of 2007.  A143-44.  HIMPP's request included 24 distinct proposed rejections and citations to 16 articles, patents, and patent publications.

A222; A242-50.  The Prentiss Patent, which now figures prominently in HIMPP's brief to this Court, was not one of those cited references.  *See id.*

HIMPP alleged that the '512 Patent claims were either anticipated or rendered obvious by the cited art.  A242-50.  For example, HIMPP alleged that all elements of claims 1 and 2 were disclosed in Patent Cooperation Treaty Publication No. WO 99/07182 ("the Shennib Application"), such that those claims were allegedly unpatentable as anticipated or obvious.  A84-88; A138; A242-43.  HIMPP further alleged that the elements of claims 7 and 8 were taught by the Shennib Application and U.S. Patent No. 5,606,621 ("the Reiter Patent"), and that those claims were obvious over the combination of the Shennib Application and the Reiter Patent.  A88-93; A140; A243.

For claim 3 (which is dependent on claims 1 and 2) and claim 9 (which is dependent on claims 7 and 8), HIMPP did not point to the Shennib Application, the Reiter Patent, or any other reference as disclosing the additional elements of those claims.  As HIMPP now admits, its "request for reexamination did not cite to prior art" to substantiate its objections to claims 3 and 9.  Opening Br. 2.  Instead, HIMPP's reexamination request asserted, without any reference to cited art, that the additional elements recited in claims 3 and 9 were "known at the time of the alleged invention."  A138-41.  HIMPP also alleged, without citation to any evidence, that modification of the Shennib device to include the elements recited in

5

claims 3 and 9 "would have been no more than the predictable use of prior art elements according to their established functions."  A138-39; A141.

The examiner declined to adopt HIMPP's proposed rejections of claims 3 and 9 because HIMPP had provided "no evidence" to support its assertion that the elements of claims 3 and 9 were known in the prior art.  A415-16.

Much as it now does before this Court, HIMPP belatedly attempted to address the examiner's confirmation of claims 3 and 9 by presenting in its responsive comments new grounds of rejection that were not properly presented with its reexamination request.  *See* Opening Br. 14-15.  Because HIMPP had violated PTO rules by raising these new grounds of rejection that included new arguments and new evidence, the examiner "expunged HIMPP's comments and accompanying declaratory evidence in their entirety."  *See id*. at 15.  HIMPP never sought review of that decision and also does not challenge that decision in its brief to this Court.  Therefore, it is undisputed that the PTO acted correctly in striking HIMPP's new grounds of rejection.

HIMPP appealed the examiner's confirmation of claims 3 and 9 to the Board, urging the Board to reject those claims as obvious in view of the inapposite art that had been cited in its reexamination request.  *See* A914-16.  As with its request for reexamination, HIMPP's appeal brief to the Board did not point to any evidence that the elements recited in claims 3 and 9 were known in the prior art.

6

*See* A922-23; A929-30; A933; A941-42; A944-45.  Instead, HIMPP argued without any evidentiary support that the claimed detachable mechanical and electrical connections "were well known to persons of ordinary skill in the art at the time of the invention" and were an obvious variation of the Shennib Application alone or when combined with the Reiter Patent.  A929; A933; A941; A944.

At oral argument before the Board, HIMPP was asked to identify "the factual basis on this record for saying that [the structural limitation in claim 3] is known in the market":

> JUDGE COCKS:  If I can ask one question about Claim 3.  I understand the *KSR*, but we have an actual structural limitation in Claim 3, a plurality of prongs that provides a detachable mechanical and electrical connection.  What is the factual basis on this record for saying that such a structural limitation is known in the market?

> MR. STERNE:  The factual basis, Your Honor, is that in the Shennib disclosure it talks about how the ear bud or the acoustic coupler can be used with any type of acoustic or audio device that I said earlier, and it would follow under *KSR*, Your Honor, that you have to be able to remove the device from that source.

> JUDGE COCKS:  So, we are looking at Shennib's disclosure as establishing that basis.

> MR. STERNE:  Yes, Your Honor. We are not-- we are not-

> JUDGE COCKS:  That answers my question.

A1558-59.

7

Thus, when asked to point to evidence that the elements recited in claims 3 and 9 were known in the art, HIMPP identified only the Shennib Application. As HIMPP now admits, before the Board it "was limited to the narrow arguments raised in the [reexamination] Request" and "HIMPP therefore carefully limited its arguments on appeal." Opening Br. 16. As HIMPP further admits, it was "confined to repeating the argument it made in its original request for reexamination" because "Office rules did not permit HIMPP to suggest new grounds of rejection or new evidence on appeal to the Board." *Id*. at 17, 22.

In this appeal, HIMPP does not rely on the argument that it actually made to the Board—that the Shennib Application discloses the elements recited in claims 3 and 9. Nor does it argue that the PTO's rules should have allowed a more expansive presentation below or that HIMPP ever timely presented prior art substantiating its contention that claims 3 and 9 are obvious. Instead, when it identifies any art at all to support that contention, HIMPP alleges to this Court that the Prentiss Patent—which it never timely or properly presented below—teaches the elements of claims 3 and 9. *See* Opening Br. 20-23, 46-48.

### C.    The Board Affirms The Examiner's Decision Not To Adopt HIMPP's Proposed Rejections Of Claims 3 And 9.

The Board found that the Shennib Application did not anticipate or render obvious claims 1, 2, 7, and 8 (A12), but ultimately rejected those claims on new grounds (A26-29). However, the Board confirmed the patentability of claims 3

and 9 because HIMPP had not proposed any adoptable rejections nor pointed to any record evidence showing that the recited elements were known in the prior art. A24-25.

The Board fully considered the only alleged support that HIMPP had provided regarding its assertion that the elements of claims 3 and 9 were known in the prior art—an office action issued in the original prosecution of the application that resulted in the '512 Patent.  *See id.*; A138-39; A140-41; Opening Br. 39. However, as the Board noted, the portion of the record relied on by HIMPP shows that the examiner never officially made a finding that the elements of claims 3 and 9 were known in the art.  A24-25.  HIMPP has not appealed the Board's finding on this point.  Further, contrary to HIMPP's assertions (A1346), the Board found that Hear-Wear had not admitted that the elements of claims 3 and 9 were known in the prior art.  A24-25; *see also* A1105-06.  HIMPP also has not appealed that finding. Finally, the Board found that HIMPP did not "direct [the Board] to any portion of the record for underlying factual support" for its assertion that the content of claims 3 and 9 was "well known."  A25.  The Board then found that the record did not "adequately convey[] that the particular distinct connection structures set forth in [claims 3 and 9] are disclosed."  *Id.*  Thus, based on the record before it, the Board affirmed the examiner's decision not to adopt HIMPP's proposed rejections of claims 3 and 9.  *Id.*

## SUMMARY OF ARGUMENT

Under the relevant statutes, PTO rules, and case law, HIMPP's reexamination request was required to include all of the art and grounds for rejection upon which HIMPP intended to rely in asserting that claims 3 and 9 are unpatentable. Nonetheless, HIMPP admits that its reexamination request failed to cite to any art to support its argument that the elements recited in dependent claims 3 and 9 were known and would have been obvious additions to the hearing aid components recited in the independent claims. In its briefing before the Board, HIMPP likewise failed to provide any evidence as to the elements recited in claims 3 and 9, and when specifically asked to point to such evidence, HIMPP did not identify the art that it now cites to this Court. The examiner and Board therefore did not err by declining to reject the appealed patent claims over art that HIMPP failed to properly identify. If HIMPP wanted to rely on the Prentiss Patent that it now cites on appeal, HIMPP should have cited that reference in its reexamination request and explained its relevance to the PTO. HIMPP provides no reason why it failed to do so.

Alternatively, HIMPP argues that the examiner and Board were required to reject claims 3 and 9 based on "common sense" or "common knowledge," rather than actual evidence. But this Court requires that assertions of common sense or common knowledge be based on a factual foundation in the record. In addition,

PTO rules require an examiner to cite evidence to support a rejection based on common knowledge, and it is reversible error for the Board to reject patent claims based on its own conclusions about common sense unless the Board can point to some concrete evidence in the record to support those conclusions.  HIMPP failed to provide the required factual foundation to support its assertions, and the examiner and Board did not err in declining to accept HIMPP's conclusory statements and attorney arguments.

HIMPP's argument that the examiner or Board should have rejected claims 3 and 9 based on judicial notice similarly fails.  First, HIMPP never asked the examiner or Board to take judicial (or administrative) notice of HIMPP's allegation that the elements of claims 3 and 9 were known, and has therefore waived that argument on appeal.  Second, even if HIMPP had asked that administrative notice be taken, the PTO would not have abused its discretion in declining to do so because assertions about the state of the hearing aid art and the knowledge of one skilled in that art require actual evidence, which HIMPP did not provide.  Further, judicial notice is proper only as to facts that defy dispute, and HIMPP did not show that the use of the claimed detachable mechanical and electrical connectors in hearing aids is such a fact that defies dispute.

If, as HIMPP suggests, the question is whether HIMPP made out a *prima facie* case of obviousness for claims 3 and 9, the answer is also no.  One cannot

make out a *prima facie* case of anything without meeting the initial burden of production of evidence. HIMPP did not meet that burden because it did not timely produce any evidence to support its arguments as to claims 3 and 9.

Finally, this Court should decline HIMPP's invitation to make new factual findings and enter new rejections against claims 3 and 9. This is a court of review that is tasked with determining whether the Board erred. This Court does not consider prior art in the first instance and does not review new grounds of rejection presented for the first time on appeal. Thus, the Court should not make the findings urged by HIMPP, whether through judicial notice or through consideration of evidence that HIMPP did not properly present to the PTO. Doing so would allow reexamination requesters like HIMPP to forego identifying the relevant evidence in the reexamination request, instead relying on this Court to remedy any deficiencies in that filing. Moreover, even if this Court were to determine in the first instance that the elements recited in claims 3 and 9 were known in the prior art, that would not determine the obviousness of those claims because other underlying factual issues would still remain.

The decision of the Board should therefore be affirmed.

## STANDARD OF REVIEW

Whether an invention would have been obvious is a question of law that is based on underlying facts. *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000).

This Court reviews the Board's compliance with the governing legal standards and ultimate conclusion on obviousness *de novo*, while the Board's factual findings are reviewed for substantial evidence. *In re Sullivan*, 498 F.3d 1345, 1350 (Fed. Cir. 2007); *In re Huai-Hung Kao*, 639 F.3d 1057, 1065 (Fed. Cir. 2011). "The substantial evidence standard requires the reviewing court to ask whether a reasonable person might find that the evidentiary record supports the agency's conclusion." *On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000).

A decision whether to invoke the doctrine of administrative or judicial notice is reviewed for abuse of discretion. *See*, *e.g.*, *Biomedical Patent Mgmt. Corp. v. California*, 505 F.3d 1328, 1331 n.1 (Fed. Cir. 2007); *Murakami v. United States*, 398 F.3d 1342, 1354-55 (Fed. Cir. 2005); *see also Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 409 (5th Cir. 2010).

## ARGUMENT

I.    **THE BOARD DID NOT ERR IN DECLINING TO ADOPT HIMPP'S REJECTIONS OF CLAIMS 3 AND 9 WHEN HIMPP FAILED TO POINT TO EVIDENCE THAT THE RECITED CLAIM ELEMENTS WERE KNOWN IN THE PRIOR ART.**

A.    **Neither The Examiner Nor The Board Was Required To Correct HIMPP's Failures By Relying On Unsupported Assertions About The Knowledge Of One Skilled In The Art.**

HIMPP was required to cite in its original request for *inter partes* reexamination all prior art it relied upon to challenge the patentability of claims 3

13

and 9. The PTO's rules make clear that an *inter partes* reexamination requester may not, except in limited circumstances not presented here, submit new prior art evidence that was not cited in the reexamination request. *See* 37 C.F.R. § 1.948 (after *inter partes* reexamination order issues, third party requester may cite additional, previously known, prior art only to rebut examiner's fact-finding or patent owner's arguments). This rule implements the command of the statute, which requires that every request for *inter partes* reexamination "set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested." 35 U.S.C. § 311(b)(2) (2010).[1]

Under these rules, if the examiner finds that a particular feature recited in a claim is not shown in the art of record, the requester may not cite new art in an effort to remedy that deficiency. *See* Manual of Patent Examining Procedure ("MPEP") § 2666.05(II) ("[A] statement in an Office action that a particular claimed feature is not shown by the prior art of record (which includes references that were cited by requester) does NOT permit the requester to then cite new art to

---

[1]    Although this case involves the version of the statute in force before the America Invents Act ("AIA"), the current statute contains the same requirement. *See* 35 U.S.C. § 312(a) (post-AIA *inter partes* reexamination petition must contain "the evidence that supports the grounds for the challenge to each claim," including "copies of patents and printed publications that the petitioner relies upon in support of the petition" and "affidavits or declarations of supporting evidence and opinions, if the petitioner relies on expert opinions").

replace the art originally advanced by requester.") (citing 37 C.F.R. 1.948(a)(1); emphasis in original).[2]  This Court has also noted the strict limitations on introducing new art in an *inter partes* reexamination proceeding.  *See Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1383 (Fed. Cir. 2012) (*inter partes* reexamination "may not include other prior art than what constituted the basis of the Director's determination of a substantial question of patentability").  Thus, an *inter partes* reexamination requester must ensure that all of the art it intends to rely on is cited in the reexamination request.

In addition, after an *inter partes* reexamination is ordered, the requester cannot propose new grounds of rejection except under limited circumstances not presented here.  *See* 37 C.F.R. § 1.947 (requester's comments "limited to issues raised by the Office action or the patent owner's response"); MPEP § 2666.05(II) (requester may propose a new rejection only if "necessitated by patent owner's amendment of the claims").  Similarly, the *inter partes* reexamination requester cannot propose a new ground of rejection on appeal to the Board (37 C.F.R. § 41.67(c)(1)(vi); 37 C.F.R. § 41.68(b)(1)(vi); 37 C.F.R. § 41.71(c)(3); Opening Br. 22) and is estopped from asserting in a civil action any ground of rejection that it could have raised in the reexamination proceedings (35 U.S.C. § 315(c) (2010)).

---

[2]     References to the Manual of Patent Examining Procedure ("MPEP") in this brief are to the Eighth Edition Incorporating Revision No. 9.

Thus, an *inter partes* reexamination requester must be careful to include all proposed grounds of rejection in its request for reexamination.

Despite these well-settled rules, HIMPP's reexamination request did not cite to any prior art to support HIMPP's assertion that the elements recited in claims 3 and 9 were known in the prior art and did not propose any rejection of those claims based on the Prentiss Patent. HIMPP expressly admits this fact, conceding that its "request for reexamination did not cite to prior art" to substantiate its objections to claims 3 and 9. Opening Br. 2. Instead, HIMPP provided only conclusory allegations that the elements recited in claims 3 and 9 were "known at the time of the alleged invention" and that modification of the prior art to include these elements "would have been no more than the predictable use of prior art elements according to their established functions." A138-39; A140-41. HIMPP's appeal brief to the Board similarly failed to point to any evidence to support its arguments as to claims 3 and 9. *See* A922-23; A929-30; A933; A941-42; A944-45.

HIMPP nevertheless argues that the Board and examiner were obligated to rectify HIMPP's failure to submit or identify any evidence and to reject claims 3 and 9 based on "common sense" rather than evidence. *See* Opening Br. 33-41. But HIMPP cites to no authority that would require the Board or the examiner to do so. HIMPP relies on *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), for the proposition that common sense and common knowledge in the art is

16

relevant when determining whether a claim would have been obvious. Opening Br. 33-34, 40-41. But although common sense and common knowledge can be relevant in some cases, those factors cannot supplant actual evidence on the point now advanced by HIMPP—what a person skilled in the art of hearing aid design would necessarily have known at the time of the invention about the kinds of detachable mechanical and electrical connections that had been and could be employed between components of a hearing aid.

Nothing in *KSR* requires the Board or the examiner to adopt a reexamination requester's proposed claim rejection when the requester failed to point to any evidence of record to support that rejection. To the contrary, as this Court has recently stated in discussing *KSR*'s holding on this point, "[i]n recognizing the role of common knowledge and common sense, [the Court has] emphasized the ***importance of a factual foundation to support a party's claim*** about what one of ordinary skill in the relevant art would have known." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (emphasis added). Thus, an assertion of obviousness based on "common knowledge" or "common sense" requires a supporting "factual foundation." The Court further explained that the "most reliable" evidence to support an assertion about what one of skill in the art would have known "is documentary evidence consisting of prior art in the area." *Id.* at 1362-63. In *Randall Manufacturing*, the reexamination requester satisfied its

17

evidentiary burden by relying before the Board on "a host of references that had been considered by the Examiner during the course of the reexamination." *Id.* at 1360.

Here, by contrast, HIMPP concededly failed to supply that requisite factual foundation in the proceedings below. As noted, HIMPP was required to submit relevant prior art at the time of its reexamination request, but failed to do so. Moreover, HIMPP's attempts to circumvent PTO rules by belatedly submitting new prior art were stricken from the record, and HIMPP does not challenge that determination. *See supra* at 6. Finally, unlike in *Randall*, HIMPP did not identify the prior art it now relies on before this Court (the Prentiss Patent) in its appeal to the Board. To the contrary, when specifically asked to identify the art of record supporting its argument that claims 3 and 9 were obvious, HIMPP did not identify that patent but instead pointed to different art that it does not raise in its brief to this Court. *See supra* at 7-8.

If, as HIMPP now urges, the examiner or the Board had invoked mere "common sense" to substitute for evidence of the knowledge of one skilled in the art of hearing aid design, that would have constituted reversible error. In *In re Zurko*, 258 F.3d 1379, 1385 (Fed. Cir. 2001), this Court reversed an obviousness determination of the Board where its "assessment of basic knowledge and common

sense was not based on any evidence in the record and, therefore, lacks substantial evidence support." As the Court held, the Board's technical expertise

> may provide sufficient support for conclusions as to peripheral issues. With respect to core factual findings in a determination of patentability, however, ***the Board cannot simply reach conclusions based on its own understanding or experience—or on its assessment of what would be basic knowledge or common sense. Rather, the Board must point to some concrete evidence in the record in support of these findings.*** To hold otherwise would render the process of appellate review for substantial evidence on the record a meaningless exercise.

*Id*. (emphasis added); *accord Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1328 (Fed. Cir. 2009) ("An examiner may not invoke 'good common sense' to reject a patent application without some factual foundation, where 'basic knowledge and common sense was not based on any evidence in the record.'") (quoting *In re Zurko*, 258 F.3d at 1383, 1385); *In re Sang-Su Lee*, 277 F.3d 1338, 1344-45 (Fed. Cir. 2002) (vacating obviousness rejection when Board and examiner relied on conclusory statement that "common knowledge and common sense" would have led skilled artisan to combine cited references).

The Court has applied the same rule in its review of district court decisions, requiring courts to rely on actual evidence rather than unsupported conclusions about common sense. As the Court held in *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1377 (Fed. Cir. 2012), "[w]ith little more than an invocation of the words 'common sense' (without any record support showing that this knowledge

19

would reside in the ordinarily skilled artisan), the district court overreached in its determination of obviousness." *Accord Won-Door Corp. v. Cornell Iron Works, Inc.*, No. 2:13-cv-331-TS, 2013 WL 5503188, at *2 (D. Utah Oct. 3, 2013) ("Defendant has not provided support for its assertion that common sense would have driven a person of ordinary skill in the art to combine the elements in the prior art to create [the patent].") (citing *Mintz*, 679 F.3d at 1377).

The PTO's rules follow these well-settled principles. Although a patent examiner may rely on common knowledge to support a rejection, this is appropriate only in very narrow circumstances. *See* MPEP § 2144.03 (providing guidance "to assist the examiners in determining when it is appropriate to take official notice of facts without supporting documentary evidence or to rely on common knowledge in the art in making a rejection, and if such official notice is taken, what evidence is necessary to support the examiner's conclusion of common knowledge in the art"). For example, if the examiner makes a rejection based on official notice of certain facts or common knowledge, the examiner must cite evidence (*e.g.*, documentary or declaratory evidence) in support of the rejection. *See* 37 C.F.R. § 1.104(d)(2); MPEP § 2144.03(C) (examiner must "provide documentary evidence" or "provide an affidavit or declaration setting forth specific factual statements and explanation to support the finding"). Moreover, neither the PTO nor this Court will accept mere attorney argument—the only thing HIMPP

relied on in its reexamination request as to claims 3 and 9—to replace actual evidence. *See* MPEP § 716.01(c)(II) ("The arguments of counsel cannot take the place of evidence in the record.") (citing *In re Schulze*, 346 F.2d 600, 602 (CCPA 1965)); *In re Geisler*, 116 F.3d 1465, 1470 (Fed. Cir. 1997) ("An assertion of what seems to follow from common experience is just attorney argument and not the kind of factual evidence that is required to rebut a prima facie case of obviousness."); *see also* MPEP § 2145(I) ("Attorney argument is not evidence unless it is an admission . . . .").

HIMPP failed to provide the required evidence to the examiner or the Board. Instead, HIMPP's *inter partes* reexamination request and briefing to the Board contained only conclusory statements and attorney argument as to claims 3 and 9. A138-41; A922-23; A929-30; A933; A941-42; A944-45.  Under this Court's precedent, HIMPP's unsupported conclusions and attorney argument cannot substitute for the required factual evidence.  Because HIMPP failed to identify the factual evidence necessary to support its contention that claims 3 and 9 are allegedly obvious, the Board acted well within its discretion when it declined to enter new rejections against those claims.  *See In re Zurko*, 258 F.3d at 1385; *In re Sang-Su Lee*, 277 F.3d at 1344-45; *see also KSR*, 550 U.S. at 418 ("[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements . . . .") (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)).

**B.      Judicial Notice Cannot Rectify HIMPP's Failures Before The PTO.**

Notwithstanding this clear authority holding that assertions regarding the state of the prior art and the knowledge of one skilled in the art must be based on actual evidence rather than unsupported assertions about "common sense," HIMPP argues that the examiner and Board erred by not rejecting claims 3 and 9.  Because the required evidentiary support was lacking, HIMPP apparently argues that the examiner or Board was required to invoke the doctrine of judicial or administrative notice to rectify HIMPP's failure to cite actual evidence.  *See* Opening Br. 28, 33, 42-43.  This doctrine cannot excuse HIMPP's own evidentiary failures.

To begin with, in its request for reexamination, HIMPP never asked the examiner or Board to invoke the doctrine of judicial notice (or administrative or official notice[3]) to find as an initial matter that the elements of claims 3 and 9 were known in the prior art.  Although HIMPP argued that it did not need to submit evidence, it never presented any specific argument to the examiner as to why those particular assertions were subject to administrative notice in the reexamination under the legal standards governing that doctrine.  Nor did it make such an

---

[3]      *See*, *e.g.*, *Ciric v. Flanigen*, 511 F.2d 1182, 1184 (CCPA 1975) (discussing the Board's ability to take administrative notice); MPEP § 2144.03 (discussing the examiner's ability to take official notice).

argument to the Board.[4]  HIMPP's contentions that the PTO committed reversible error by not applying the administrative notice doctrine are therefore waived.  *See In re Watts*, 354 F.3d 1362, 1368 (Fed. Cir. 2004) (arguments not presented to the Board are waived on appeal).

But even if HIMPP had presented its administrative notice argument below, that would not present grounds for reversal now.  Application of judicial or administrative notice is discretionary and is reviewed only for abuse of that discretion.  *See*, *e.g.*, *Biomedical Patent Mgmt. Corp.*, 505 F.3d at 1331 n.1; *Murakami*, 398 F.3d at 1354-55; *Enriquez-Gutierrez*, 612 F.3d at 409.  The examiner and Board would not have abused their discretion in requiring HIMPP to substantiate its contentions regarding the obviousness of claims 3 and 9 with actual evidence.  As explained above, *see supra* at 17-21, this Court has consistently held—and the PTO's rules require—that all assertions regarding the state of the prior art and knowledge of the skilled artisan must be supported by actual evidence rather than conclusory assertions about what is allegedly common sense and

---

[4]     HIMPP did argue that the previous examiner in the original prosecution of the patent had made such findings and that that examiner's statements themselves constituted official notice of those facts.  A24.  But those arguments were rejected, A24-25, and HIMPP has not renewed them on appeal.  Instead, HIMPP now appears to argue that the examiner and Board in the reexamination proceeding should have employed the doctrine of administrative notice as an initial matter, but it never advanced that argument below.

common knowledge. Thus, this Court's predecessor long ago "reject[ed] the notion that judicial or administrative notice may be taken of the state of the art. The facts constituting the state of the art are normally subject to the possibility of rational disagreement among reasonable men and are not amenable to the taking of such notice." *In re Eynde*, 480 F.2d 1364, 1370 (CCPA 1973). Given that the Board would have been subject to reversal for failing to cite actual evidence of the state of the art in support of an obviousness rejection, it could not have abused its discretion in failing to employ administrative notice to reach the same result.

Moreover, it would disrupt the PTO's orderly procedures if this Court were to hold that the failure to administratively notice facts for which a party submitted no evidence was grounds for reversal, as examiners and the Board would never know which of the thousands of their prior art determinations do or do not require evidentiary support. Even if it would be permissible for the PTO to employ this discretionary doctrine in exceptional cases to "provide sufficient support for conclusions as to peripheral issues," *In re Zurko*, 258 F.3d at 1386, it is not an abuse of that discretion to decline to do so and instead require evidentiary support, particularly when application of the doctrine was never urged below.

Even when an examiner has been asked to and wishes to exercise his or her discretion to administratively notice facts, "the notice of facts beyond the record which may be taken by the examiner must be 'capable of such instant and

unquestionable demonstration as to defy dispute.'" MPEP § 2144.03(A) (quoting *In re Ahlert*, 424 F.2d 1088, 1091 (CCPA 1970)). What one skilled in hearing aid design would have known about appropriate detachable mechanical and electrical connectors for use in hearing aids at the time of the '512 Patent does not satisfy that exacting standard. Contrary to HIMPP's assertions (*see* Opening Br. 45), claims 3 and 9 do not recite a simple generic electrical cord. Rather, those claims are directed at the use of detachable mechanical and electrical connecting devices in tiny hearing aid devices, portions of which are placed inside a person's ear. Claim 3 recites a particular connector that "provide[s] a detachable mechanical and electrical connection to an audio processing module," while claim 9 recites a particular connector "that provide[s] a detachable mechanical and electrical connection to said behind-the-ear-module." A70.

It cannot be said that the use of miniature detachable mechanical and electrical connectors in such an esoteric industry is "capable of such instant and unquestionable demonstration as to defy dispute." *In re Ahlert*, 424 F.2d at 1091; *see also* MPEP § 2144.03(A) ("[A]ssertions of technical facts in the areas of esoteric technology or specific knowledge of the prior art must always be supported by citation to some reference work recognized as standard in the pertinent art."). Nor is it anything like the facts subject to judicial notice in the

cases cited by HIMPP.[5]  Even if the PTO had discretion to take administrative notice of the state of the art, the examiner and Board did not abuse that considerable discretion in declining, without evidentiary support, to opine on what was or was not known to those skilled in the esoteric hearing aid industry at the time of the patent.  *See In re Eynde*, 480 F.2d at 1370 ("[W]e reject the notion that judicial or administrative notice may be taken of the state of the art.").

HIMPP cites no case in which this Court ever reversed the Board for failing to take administrative notice of the state of the art and requiring evidentiary support.  Instead, HIMPP cites a 138-year-old case, *Brown v. Piper*, 91 U.S. 37 (1875), but that musty decision cannot save HIMPP from its failures to follow PTO procedure.  In *Brown*, which was a judicial infringement action, the Supreme Court held a patent invalid as anticipated by another patent that was properly in the record and that the defendant had properly relied upon.  *See id.* at 40 ("The defence relied upon in the answer is the want of novelty; and several instances of prior use and knowledge, with the requisite circumstances of time, place, and persons, are alleged.").  In dicta, the Court also noted that the existence of ice cream freezers

---

[5]      *See* Opening Br. 33-34; *Brown v. Piper*, 91 U.S. 37, 43 (1875) (ice cream freezer); *In re Fox*, 471 F.2d 1405, 1407 (Fed. Cir. 1973) (fact that "tape recorders commonly erase tape automatically when new 'audio information' is recorded on a tape which already has a recording on it"); *In re Raynes*, 7 F.3d 1037, 1040 (Fed. Cir. 1993) ("use of video to display programming and other information").

was subject to judicial notice and that if the lower court had adopted that view it "might have stopped short" at the patent itself without looking at other evidence. *Id*. at 43-44. But that statement was dicta unnecessary to the Court's holding, which was based on prior art properly submitted and considered below. Thus, it is not surprising that HIMPP cites no case from either this Court or the PTO relying on *Brown* to excuse a challenger's failure to produce competent evidence to sustain an obviousness objection before the PTO.

Indeed, even in the *Brown* dicta, the Court made clear that under the judicial notice doctrine only "[f]acts of universal notoriety need not be proved" and that the doctrine "is to be exercised by courts with caution. Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject should be resolved promptly in the negative." *Id*. at 42-43; *see also In re Ahlert*, 424 F.2d at 1091. For the reasons set forth above, under that exacting standard the examiner and Board did not abuse their discretion in declining to opine on the state of the art of hearing aid design in the absence of any timely-filed evidence attesting to those key facts.

### C.    HIMPP Did Not Make Out A *Prima Facie* Case Of Invalidity Of Claims 3 And 9.

Alternatively, HIMPP argues that it at least made out a "*prima facie* case" in its reexamination request, which should have shifted the burden to the examiner or Hear-Wear to come forward with evidence rebutting that case. *See* Opening Br.

27

31-32, 37-38, 40-41.  This argument fails for the same reasons as HIMPP's

principal argument:  even a *prima facie* case still requires production of actual

evidence rather than simply conclusory assertions.

Mere allegations, unsupported by evidence, do not make out a *prima facie*

case of anything.  As this Court has explained, "[t]he *prima facie* case is a

procedural tool, and requires that the examiner initially **produce evidence**

sufficient to support a ruling of obviousness; thereafter the burden shifts to the

applicant to come forward with evidence or argument in rebuttal."  *In re Kumar*,

418 F.3d 1361, 1366 (Fed. Cir. 2005) (citation omitted; emphasis added).  Thus,

"[t]he Board's own conjecture does not supply the requisite substantial **evidence** to

support the rejections . . . ."  *In re Huai-Hung Kao*, 639 F.3d at 1066 (emphasis in

original); *see also In re Piasecki*, 745 F.2d 1468, 1472 (Fed. Cir. 1984) ("As

adapted to *ex parte* procedure, *Graham* is interpreted as continuing to place the

burden of proof on the Patent Office which requires it to produce the factual basis

for its rejection of an application under sections 102 and 103.  After a *prima facie*

case of obviousness has been established, the burden of going forward shifts to the

applicant.") (citation and internal quotation marks omitted).

In this *inter partes* reexamination, HIMPP likens its responsibilities to those

of the examiner in an initial prosecution, requiring HIMPP to make out at least a

*prima facie* case of obviousness in its reexamination request.  *See* Opening Br. 40

(arguing that "HIMPP's request for reexamination met at least the *prima facie* case standard"). But even if the *prima facie* case concept applied in this context, HIMPP failed to meet its burden. As HIMPP itself notes, a *prima facie* case involves "an initial burden of ***production***." Opening Br. 38 (emphasis added); *see In re Oetiker*, 977 F.2d 1443, 1449 (Fed. Cir. 1992) (Plager, J., concurring) ("Specifically, when obviousness is at issue, the examiner has the burden of persuasion and therefore the initial burden of production. Satisfying the burden of production, and thus initially the burden of persuasion, constitutes the so-called *prima facie* showing."). A burden of production, however, always requires the production of actual evidence, not mere allegations. *See*, *e.g.*, *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245 n.4 (2011) (burden of production "specif[ies] which party must come forward with evidence at various stages in the litigation").

Accordingly, whether the issue is analyzed in terms of whether HIMPP satisfied its ultimate burden of persuasion or an initial burden of production, the answer is the same. Either way, HIMPP was required to make out its case with actual evidence, not mere conclusory assertions. It failed to do so.

### D. HIMPP Failed To Timely Submit The Art That It Now Asserts Is Relevant To The Validity Of Claims 3 And 9.

In addition to arguing that it did not need to produce any actual evidence supporting the invalidity of claims 3 and 9, HIMPP also asserts that invalidity is shown by the 1964 Prentiss Patent. *See* Opening Br. 46-48. However, this

argument, and the cited art upon which it relies, were never properly presented below and cannot be raised for the first time on appeal.

As noted, HIMPP expressly admits that its "request for reexamination did not cite to prior art" to substantiate its objections to claims 3 and 9.  Opening Br. 2.  As further explained, under the PTO's unchallenged rules of practice, a reexamination requester is strictly limited to the prior art cited in the reexamination request and cannot rely on additional art except in extraordinary circumstances not presented here.  *See supra* at 13-15; 37 C.F.R. § 1.948; MPEP § 2666.05(II); *Belkin Int'l*, 696 F.3d at 1383.  Thus, when HIMPP attempted to cite additional art in support of the invalidity of claims 3 and 9, that attempt was stricken from the record (*see* Opening Br. 15), and HIMPP does not challenge that decision on appeal.

HIMPP now argues that it "did everything in its power to bring Prentiss into the *inter partes* reexamination."  Opening Br. 30; *see also id*. at 46 ("HIMPP made every effort to get Prentiss explicitly before the Office, without violating the *inter partes* reexamination rules, as the Office interprets them.").  But that statement is demonstrably false.  If HIMPP wanted to rely on Prentiss or any other reference, it could easily have done so, by simply citing and discussing that reference in its reexamination request as PTO rules require.  HIMPP also could have submitted declaratory evidence attempting to substantiate its contentions about the state of

30

the art in its request for reexamination.  *See* MPEP § 2617(II).  HIMPP did neither.

Instead, it submitted only conclusory, unsupported assertions.  And even when

HIMPP was specifically asked by the Board to identify the art of record supporting

the invalidity of claims 3 and 9, HIMPP did not point to the Prentiss Patent.

A1558-59.  The argument has therefore been waived.  *Watts*, 354 F.3d at 1368.

HIMPP nevertheless argues that because, in its view, the Prentiss Patent was

part of the record below, the examiner and Board should have reached out to

invalidate claims 3 and 9 based on that art, even though HIMPP never properly

presented any arguments based on that art.  *See* Opening Br. 42-43.[6]  That

argument fails.

HIMPP says that the examiner and Board should have rejected claims 3 and

9 in view of the Prentiss Patent merely because it was listed in an information

disclosure statement filed by ***Hear-Wear***, not HIMPP, more than a year after

HIMPP's reexamination request.  *See* Opening Br. 20, 22-23.  That lone citation

---

[6]     HIMPP failed to properly present the Prentiss Patent to the examiner or the Board during the reexamination.  Accordingly, when reproducing drawings and discussing the actual text of the Prentiss Patent for the first time on appeal, HIMPP does not cite to the official record of the *inter partes* reexamination, but rather newly provides a copy of the Prentiss patent to this Court, which HIMPP says it is doing "for ease of reference."  Opening Br. 20.  As explained below, HIMPP's reliance in this appeal on text and drawings from the Prentiss Patent is improper because HIMPP did not rely on the Prentiss Patent in its reexamination request or briefing or argument to the Board.

does not suffice to preserve HIMPP's current arguments regarding the Prentiss

Patent. That citation occurred long after the reexamination request, which is where

HIMPP was required to include any and all references supporting its invalidity

contentions. *See supra* at 13-15. And regardless, HIMPP never timely advanced

any invalidity arguments based on the Prentiss Patent before either the examiner or

the Board. Indeed, as noted, when HIMPP was specifically asked by the Board for

the record references supporting the invalidity of claims 3 and 9, HIMPP did not

point to the Prentiss Patent. A1558-59.

Thus, notwithstanding that a citation to the Prentiss Patent was contained in

a Hear-Wear information disclosure statement, the examiner and Board did not err

in declining to apply that art citation when HIMPP never timely presented any

arguments that the reference supported invalidity. This Court has "decline[d] to

consider [an] appellant's new argument regarding the scope of [a] patent raised for

the first time on appeal." *Watts*, 354 F.3d at 1368. Where "the appellant failed to

argue his current interpretation of the prior art below, we do not have the benefit of

the Board's informed judgment on this issue for our review." Thus, in *Watts*, the

Court found "no reason why we should excuse [appellant's] failure to raise this

argument before the Board." *Id.*; *see also In re Sutton*, No. 2012-1255, 497 Fed.

Appx. 29, 36 n.2 (Fed. Cir. Nov. 20, 2012) ("The examiner and the Board did not

have an opportunity to provide any factual findings on [appellant's] new argument;

therefore, we consider this argument waived.") (A6300-07); *In re Zurko*, 258 F.3d at 1386 n.2 ("[W]e cannot accept the Commissioner's invitation to now search the record for references in support of the Board's general conclusions concerning the prior art. Even if any such references could support these conclusions, it would be inappropriate for us to consider references not relied upon by the Board.").

HIMPP admits that on appeal to the Board it "carefully limited its arguments" to repetition of the arguments made to the examiner because "Office rules did not permit HIMPP to suggest new grounds of rejection or new evidence on appeal to the Board." Opening Br. 16, 22. HIMPP cannot now belatedly expand its case before this Court, which sits only to review the decision of the Board made in response to the arguments and record presented to it.

Nor is it relevant or material that the Prentiss Patent was cited in an entirely separate *ex parte* reexamination proceeding. HIMPP contravenes the Court's rules by including the record of that separate proceeding in the appendix of this case. HIMPP argues that the record of the *ex parte* proceeding is "part of the record in this case since it is an intrinsic part of the overall file history for the '512 patent." Opening Br. 24. But the record on appeal includes only the proceedings before the agency that are under review. Fed. R. App. P. 16(a). As HIMPP notes, the PTO expressly *refused* to merge the two proceedings. Opening Br. 24. HIMPP does not challenge that decision, which is therefore presumed correct. The record of

this case cannot include the record of another separate case that the PTO properly determined not to merge with this one. *Cf. Cruz v. Dep't of the Navy*, 934 F.2d 1240, 1245 n.6 (Fed. Cir. 1991) (appellant "improperly includes in the appendix and discusses in his brief" documents that were not considered by agency; "[b]ecause those documents were not part of the record before the Board . . . they were excluded from the appendix and we have necessarily ignored them") (citation omitted).

But regardless of whether that *ex parte* proceeding is formally part of the record of this appeal, the examiner in this case committed no error in not *sua sponte* relying on the Prentiss Patent merely because it had been cited in the *ex parte* proceeding. HIMPP implies that it was improper for the examiner to confirm claims 3 and 9 in this proceeding while rejecting those claims for different reasons in a non-final action in the *ex parte* proceeding, and argues that the Board should have *sua sponte* invalidated the claims based on references submitted in that separate proceeding. *See* Opening Br. 42-43. Both the examiner and the Board acted correctly. The examiner and the Board address only arguments properly made in the specific proceeding under consideration, and arguments that are not made are deemed waived. *See supra* at 23, 32-33. In this proceeding, HIMPP failed to support its invalidity contentions regarding claims 3 and 9 with any cited art or other evidence, and its challenges to those claims were thus properly

rejected.  In the *ex parte* proceeding, which is not before this Court, HIMPP raised

different arguments, but at the conclusion of that proceeding claims 3 and 9 were

also upheld.  Opening Br. 26-27.  HIMPP does not explain how the Board acted

improperly in this case by not *sua sponte* considering the separate *ex parte*

proceeding, when the claims at issue here were upheld in both cases.

## II.    THIS COURT CANNOT MAKE NEW FACTUAL FINDINGS AND ENTER NEW REJECTIONS AGAINST CLAIMS 3 AND 9.

For the foregoing reasons, the Board did not err in declining to invalidate

claims 3 and 9 based on arguments and evidence that were never timely submitted

below.  That should be the end of this case.  HIMPP, however, contends that even

if the Board did not commit any reversible error, this Court should nevertheless

take it upon itself to invalidate the claims by considering HIMPP's new arguments

and evidence in the first instance.  Opening Br. 43-48.  This argument

misconceives the process of appellate review of Board decisions.  This Court sits

as a court of review, not some sort of super-examiner.  Accordingly, once the

Court determines that the Board committed no error—as it should, for the reasons

set forth above—that is the end of the Court's inquiry and HIMPP's appeal must

be denied.

Having failed to make its case before either the examiner or the Board,

HIMPP is not entitled to a third bite at the apple before this Court.  A party

dissatisfied with a decision in an *inter partes* reexamination is entitled only to

appeal the Board's decision to this Court.  35 U.S.C. § 141 (2010).  The Court's

duties are thus limited to reviewing the Board's decision, not making new factual

findings based on evidence not properly before the Board and issuing new

rejections on appeal.  It is the role of the PTO, not this Court, to review the prior

art in the first instance and to make any necessary factual findings based on the

prior art.  *See In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011) ("This court

does not reweigh evidence on appeal, but rather determines whether substantial

evidence supports the Board's fact findings."); *In re Margolis*, 785 F.2d 1029,

1031 (Fed. Cir. 1986) ("the entire body of evidence, [including] that arising in the

prior art . . . must be weighed in the first instance by the PTO").  Where, as here,

the Board committed no error, that is the end of the matter on appeal.

If this Court were to accept HIMPP's invitation to make its own rejections

based on new evidence not properly before the Board, whether through judicial

notice or otherwise, that would effectively vitiate the administrative process.  On

factual issues such as the content of the prior art, the PTO is the fact-finder and this

Court sits only to review the PTO's decisions made on the record properly before

that body.[7]  As this Court's predecessor therefore explained long ago "it is too well

---

[7]    *See Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1357 (Fed.
Cir. 2000) (discussing "the deference that this court must properly give to the
PTO's factual determinations" ) (citing *Dickinson v. Zurko*, 572 U.S. 150, 165
(1999)); *Singh v. Brake*, 222 F.3d 1362, 1372 (Fed. Cir. 2000) (Gajarsa, J.

settled to require citation of authority that we review only rejections made by the Patent Office in its examining and internal appellate functions and do not consider grounds of rejection presented for the first time in the brief of its solicitor." *In re Corth*, 478 F.2d 1248, 1253 (CCPA 1973). If this Court holds that it must take judicial notice of the alleged fact urged by HIMPP or consider in the first instance prior art that HIMPP failed to timely present below, all reexamination requesters would similarly be authorized to appeal to this Court to remedy deficiencies in their reexamination filings or Board appeals. That would be both improper and inefficient. It would also violate the governing statutes, which require a reexamination request to include all evidence supporting invalidity. *See* 35 U.S.C. § 311(b)(2) (2010); 35 U.S.C. § 312(a) (2013).

But even if the Court had the authority to make its own validity determination based on evidence not properly cited to the examiner or the Board, there would be no cause to exercise that extraordinary power here. HIMPP provides no reason why it could not have included the art it now raises, or even make a request for administrative notice, in its reexamination request. And HIMPP did not identify the Prentiss Patent for the Board, even when HIMPP was

---

concurring) ("Under the Court's decision in *Dickinson v. Zurko*, we must give proper deference to the PTO's factual determinations. Because of the deference that must be afforded, we cannot, and should not, ever substitute our own factual determinations for those made by the PTO.") (citation omitted).

specifically asked to identify evidence as to the elements in claims 3 and 9.

A1558-59.  This Court should not excuse HIMPP's failure to present evidence and

arguments that it could have—but did not—present to the PTO.

Finally, even if this Court were to hold that the PTO erred in assessing the

patentability of claims 3 and 9—which it should not—the proper remedy would

not be for this Court to enter its own rejections on grounds not reached by the

Board.  This Court's review is limited to the grounds considered by the Board.  *See*

*SEC v. Chenery*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a

determination or judgment which an administrative agency alone is authorized to

make, must judge the propriety of such action solely by the grounds invoked by the

agency."); *In re Applied Materials, Inc.*, 692 F.3d 1289, 1295 (Fed. Cir. 2012)

("The Board's judgment must be reviewed on the grounds upon which the Board

actually relied.") (citing *Chenery*, 332 U.S. at 196).  HIMPP alleges on appeal that

the PTO erred by not properly evaluating HIMPP's assertion of common

knowledge or the Prentiss Patent.  *See, e.g.*, Opening Br. 2, 14, 18, 29.  Even if

those arguments were given credence, the Court cannot enter a new ground of

rejection on appeal that was not considered or relied upon by the PTO.  *See In re*

*Zurko*, 258 F.3d at 1385 ("This new combination of references would constitute a

new ground for rejection, not considered or relied upon by the Examiner or the

Board.  It is well settled that it would be inappropriate for us to consider such a new ground of rejection.").

Indeed, even if HIMPP were correct that the PTO erred in holding that HIMPP failed to submit evidence that the connectors recited in claims 3 and 9 were known in the art—and HIMPP is not correct—that would not determine the obviousness of those claims because other factual issues would remain.  For example, the record lacks any evidence or findings that one of ordinary skill in the art would have an apparent reason to combine the connectors of claims 3 and 9 with the other recited hearing aid elements.  *See KSR*, 550 U.S. at 1740-41 ("Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.").  Nor does the record contain any evidence or findings that one of ordinary skill in the art would have a reasonable expectation of success in making such a combination.  *Amgen Inc. v. F. Hoffman-LA Roche Ltd*, 580 F.3d 1340, 1362 (Fed. Cir. 2009) ("An obviousness determination requires that a skilled artisan would have perceived a reasonable expectation of success in making the invention in light

of the prior art."). Thus, the Court should decline HIMPP's request to adopt new obviousness rejections on appeal.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the Board as to claims 3 and 9.

Respectfully submitted,

/s Jonathan S. Franklin
Jonathan S. Franklin
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 662-0466

Sheila Kadura
FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Boulevard, Suite 1100
Austin, TX  78701-4255
(512) 474-5201

December 5, 2013                    Counsel for Appellee

## CERTIFICATE OF SERVICE

I certify that on December 5, 2013, this Brief for Appellee was served on all counsel of record by email via the Court's CM/ECF system.

/s Jonathan S. Franklin
Jonathan S. Franklin
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 662-0466

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that

this Brief for Appellee is proportionately spaced and contains 9,888 words

excluding parts of the document exempted by Rule 32(a)(7)(B)(iii).

/s Jonathan S. Franklin
Jonathan S. Franklin
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Ave., N.W.
Washington, D.C.  20004
December 5, 2013                (202) 662-0466